[Civil No. 3928.   Filed February 16, 1938.]

[76 Pac. (2d) 321.]

C. M. MENDERSON, Appellant, v. CITY OF PHOE-
NIX, a Municipal Corporation, JOHN H. UDALL,
as Mayor of City of Phoenix, a Municipal Cor-
poration, and E. E. READING, C. G. SULLIVAN,
J. R. FLEMING, HARRY T. DUFFY, as City
Commissioners of the City of Phoenix, a Muni-
cipal Corporation, EVAN S. STALLCUP, as City
Manager of the City of Phoenix, a Municipal Cor-
poration, and JAMES GIRAND, as Superinten-
dent of the Street Railways of City of Phoenix,
and City Engineer of the City of Phoenix, a Muni-
cipal Corporation, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. I. A. Jennings, City Attorney, and Mr. Hess Seaman, his Assistant, for Appellees.

LOCKWOOD, J.—C. M. Menderson, hereinafter called plaintiff, brought suit against the City of Phoenix, a municipal corporation, and various and sundry of its officers, hereinafter called defendants, seeking an injunction preventing defendants from operating a municipal bus line within the corporate limits of the City of Phoenix. The complaint, after the various necessary formal allegations, set up that plaintiff was operating certain bus lines within the City of Phoenix, under a certificate of necessity and convenience issued by the Corporation Commission, and that the

defendants, although possessing no such certificate, operated a municipal bus line paralleling and competing with plaintiff's lines, to his great damage. A temporary injunction was issued, and thereafter defendants demurred to plaintiff's complaint. The demurrer was sustained by the court, and, plaintiff declining to amend further and standing upon the allegations of his complaint, the temporary injunction was dissolved, and judgment rendered dismissing the action, whereupon this appeal was taken.

The facts are not in dispute, there being but one ultimate question of law presented by the record for the determination of this court, which is,

"has a municipal corporation the right to own and operate a bus line for the common carriage of passengers within its corporate limits, without first obtaining a certificate of necessity and convenience from the Corporation Commission?"

In answering this question, there are three points which require consideration: (a) Does the Constitution of Arizona confer jurisdiction upon the Corporation Commission to regulate the operation of a municipally owned transportation system for hire by a municipal corporation within its own limits? (b) If the Constitution does not directly confer such jurisdiction, may the legislature, under the provisions of section 6, article 15, of the Constitution, confer it upon the commission? And (c) If it may do so, has it done so as far as motorbusses are concerned, by virtue of chapter 100 of the Regular Session, 1933?

The constitutional powers, duties, and limitations of the Corporation Commission are set forth in article 15 of the Constitution. Section 2 thereof defines public service corporations in the following language:

"All corporations other than municipal engaged in carrying persons or property for hire; or in furnishing gas, oil, or electricity for light, fuel, or power; or in

furnishing water for irrigation, fire protection, or other public purposes; or in furnishing, for profit, hot or cold air or steam for heating or cooling purposes; or in transmitting messages or furnishing public telegraph or telephone service, and all corporations other than municipal, operating as common carriers, shall be deemed public service corporations.''

And all regulatory powers over public utilities granted the commission by the balance of article 15 are expressly referred to as being over ''public service corporations.''

█ It will be seen thereby that all corporations which are engaged in carrying passengers for hire, and all corporations operating as common carriers, are deemed public service corporations within the meaning of the Constitution, *with the express and specific exception of municipal corporations.* We think that no plainer language could have been used by the makers of the Constitution to state that the constitutional powers conferred upon the Corporation Commission, in regard to the government and regulation of public utilities, were not intended to, and did not, include those owned and operated by municipal corporations of any character. Indeed, while plaintiff presents an argument which might well have been addressed to the discretion of the Constitutional Convention, pointing out the terrible consequences which he believes will result to the public in case the Corporation Commission is not allowed to regulate municipal corporations operating public utilities, his contention that such constitutional power does exist is not very strenuous. We think it too clear for extended discussion that the Constitution not only does not expressly authorize the Corporation Commission to regulate municipal corporations which are operating public utilities, but that it, by necessary implication, forbids such regulation.

The next question is whether, notwithstanding this fact, the legislature may grant such power to the commission, under section 6, article 15, of the Constitution. This section reads as follows:

"The lawmaking power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the Commission may make rules and regulations to govern such proceedings."

It is urged by plaintiff that under this section the legislature may grant to the Corporation Commission the power to regulate municipal corporations operating public utilities, and that it has done so in chapter 100, Session Laws 1933. The language of the section is general, and not specific, and, were it not for two considerations, a plausible argument along this line might well be maintained. The first is that it was the evident intent of the Constitutional Convention, as expressed in section 2, *supra,* to exclude municipal corporations from the jurisdiction of the Corporation Commission, and the second, that if we are to follow the argument of plaintiff and give section 6, *supra,* the wide scope which he contends for, it would, in effect, authorize the legislature to confer jurisdiction upon the Corporation Commission to regulate and govern every department of state, from the highest to the lowest, in the minutest degree, with the exception, perhaps, of the legislature itself. If the legislature may confer jurisdiction upon the Corporation Commission to regulate one subdivision of the state government in its operation, it may equally do so with any other subdivision or branch, and the mere fact that other provisions of the Constitution may have expressly, or by implication, have withheld that power, would be immaterial, for section 2, *supra,* withheld the

power of regulating municipal corporations in their operation of public utilities. If one prohibition of the Constitution may be set aside by the legislature under the general power of section 6, *supra,* there is no reason why another may not be. We are certain the whole history of the making of our Constitution negatives the idea that it was ever intended that the power of regulating the actions of municipal corporations should be delegated by the legislature to any other body. Such regulatory power lies in the legislature alone, if anywhere, and even it may not delegate that power. The reasonable and natural construction of section 6, *supra,* is not that the legislature may enlarge the jurisdiction granted by the Constitution to the Corporation Commission to include subject matter obviously intended to be excluded from such jurisdiction, but that it may enlarge or extend the powers and duties of the commission over the subject matter of which it has already been given jurisdiction, and other matters of the same class, not expressly or impliedly exempt by other provisions of the Constitution. Such a construction of section 6, *supra,* is in harmony with our general scheme of government and with all other provisions of the Constitution. The construction contended for by plaintiff would outrage both.

We have been cited by plaintiff to many cases which he contends intimate that such power does rest in the legislature: *Northeast Rapid Transit Co.* v. *City of Phoenix,* 41 Ariz. 71, 15 Pac. (2d) 951; *Sumid* v. *City of Prescott,* 27 Ariz. 111, 230 Pac. 1103; *Corporation Commission* v. *People's Freight Line,* 41 Ariz. 158, 16 Pac. (2d) 420; *Van Dyke* v. *Geary,* 244 U. S. 39, 37 Sup. Ct. 483, 485, 61 L. Ed. 973. We have examined all of these cases carefully and not one of them considers in any manner the right of the Corporation Commission to regulate a municipal corporation operating a public utility. The nearest that the language of any

of the cases might come to sustaining the contention of plaintiff is that of *Van Dyke* v. *Geary, supra.* The Supreme Court of the United States said:

"Article 15, entitled, 'The Corporation Commission,' consists of nineteen sections, and confers broad powers of regulation. The character of the service, that is, whether it is public or private, and not the character of the ownership, determines ordinarily the scope of the power of regulation. The need of such regulation and the manner of exercising it are the same whether a public utility is incorporated or not; and the purpose of a public service commission could easily be frustrated if concerns owned by individuals were excluded from its operation. The district court accordingly declined to give a technical meaning to the term 'public service corporation,' and interpreted it in the broad popular sense as embracing all public utilities. That construction is in line with numerous decisions holding that statutes imposing certain liabilities on 'railroad corporations' embrace all railroads, whether individually or corporately owned.

"It is contended that article 14, entitled, 'Corporations Other Than Municipal,' renders this liberal construction of article 15 inadmissible. Section 1, of article 14, defines ' "corporations," as used in this article . . . to include all associations and joint stock companies having any powers or privileges of corporations not possessed by individuals or copartnerships'; and § 16 provides that the records of 'all public service corporations' shall at all times be subject to the inquisitorial powers of the state. It is argued that the term 'public service corporation,' thus excluding individually-owned utilities, could hardly have a different meaning in the very next article of the Constitution. But the answer is that article 14 deals only with the organization, incorporation, management, and powers of technical corporations, and the definition therein of 'corporation' is, for that reason, expressly limited by the phrase *'as used in this article.'* This is significant and is entirely in harmony with the view that the term as used in some other article, having a

wholly different purpose, should bear a different and broader construction.

"Furthermore, the powers of the Arizona Corporation Commission are not limited to those expressly granted by the Constitution. Section 6 of article 15 authorizes the legislature to 'enlarge the powers and extend the duties of the Corporation Commission'; and the legislature, by defining 'water corporation' to include 'persons' owning a water utility, clearly extends the powers of the Commission to individually-owned concerns. So that, even if the Commission was not originally vested by the Constitution with power over utilities owned by individuals, it now has that power directly by legislative enactment. In other words, the Constitution prescribed a certain minimum of power with which the Commission was intrusted; it authorized the legislature to enlarge from time to time the scope of the Commission's duties; and the legislature extended them to water concerns owned by individuals.

"This construction of the Arizona Constitution by the district court is in harmony with the contemporaneous construction evidenced by the Public Service Corporation Act (*supra*) enacted at the first session of its legislature. In the absence of an authoritative decision of the Arizona supreme court to the contrary, this legislative construction, reasonable in itself and designed to accomplish the obvious purpose of the constitutional provision, ought not to be set aside by this court. [Citing case.]"

█ It will be seen by this language that the court never had in its mind the idea that the constitutional provision was meant to cover municipal corporations, but merely decided that it covered private individuals operating public utilities, as well as private individuals associated together in a corporate character, for the reason that the same necessity existed for regulating utilities owned by individuals as those owned by private corporations. It is, of course, a truism that the same necessity does not exist for the regulation of a municipally operated utility. In its reference to

legislative action under section 6, it indicated that it was considering only the extension of the power of the commission to cover utilities owned by private *individuals,* which were obviously in the same class as those owned by private *corporations.* Further, it expressly stated that at the time the Arizona Supreme Court had not construed the constitutional provision, and that its construction by the federal courts would hold only so long as this court, which under all the authorities has the power of final decision as to the meaning of the state Constitution, had not spoken.

A contention similar to that of plaintiff was raised in the case of *City of Pasadena* v. *Railroad Com.,* 183 Cal. 526, 192 Pac. 25, 26, 10 A. L. R. 1425. The Constitution of California conferred upon the railroad commission of that state—a body greatly similar in character to our Corporation Commission—power to regulate transportation facilities, in the following language:

" 'Every private corporation, and every individual or association of individuals, owning, operating, managing, or controlling any commercial railroad, interurban railroad, street railroad, canal, pipe-line, plant, or equipment, or any part of such railroad, canal, pipe-line, plant, or equipment within this state, for the transportation or conveyance of passengers, or express matter, or freight of any kind, including crude oil, or for the transmission of telephone or telegraph messages, or for the production, generation, transmission, delivery or furnishing of heat, light, water or power or for the furnishing of . . . wharfage facilities, either directly or indirectly, to or for the public, and every common carrier, is hereby declared to be a public utility subject to such control and regulation by the railroad commission as may be provided by the legislature, and every class of private corporations, individuals, or associations of individuals hereafter declared by the legislature to be public utilities shall likewise be subject to such control and regulation. The railroad commission shall have and exercise such

power and jurisdiction to supervise and regulate public utilities, in the state of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the legislature, *and the right of the legislature to confer powers* upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution.' '' Const. Cal., art. 12, § 23. (Italics ours.)

It was urged that a municipal corporation, when operating a public utility, was not acting in its governmental, but in its proprietary, capacity, and it was subject to the same rules as private persons, and therefore the term "private corporation and individual" appearing in the Constitution authorized the legislature to confer powers upon the Railroad Commission of regulating the rights of municipalities engaged in such services. The court used the following language:

"It is not true that a city is a private corporation when carrying on a municipally owned public utility. No decision so holds. All the decisions on the subject recognize the fact that a city does not change its character by engaging in such enterprises. The entire course of reasoning in the opinions is founded on the postulate that such city retains its character as a municipal corporation, and the burden of the arguments consists of efforts to find reasons for holding it liable to the same extent as a private corporation engaged in the same service, notwithstanding the fact that the city carries on the business as a municipal corporation. They all assume that such city is as much a municipal corporation with respect to such business functions as it is with regard to the exercise of its purely governmental powers. The distinction does not go to its character as a corporation, but to its liabilities in exercising one class of its powers, as compared to its liabilities in the exercise of its functions as a local governmental agency. . . .

"If the provision of section 22 that 'the authority of the Legislature to confer upon the Railroad Com-

mission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred' upon the commission by the Constitution, should be thenceforth 'plenary and unlimited by any provision of this Constitution,' is to be taken literally, its possible results would be so startling that it cannot be conceived that any citizen could ever be induced knowingly to vote for such a measure. If so construed, the Legislature would thereby be empowered to confer upon the Railroad Commission all the powers of government, executive, judicial, and even the legislative power itself. Of course, no such effect can be allowed to this broad declaration. It must be construed in connection with the general subject of the section, with the other sections which precede it relating to the same general subject, and with the place in which it occurs in the Constitution. It is a part of article 12, the whole of which is devoted to the subject of private corporations, as distinguished from public corporations; the latter being the particular subject of article 11. The powers referred to are therefore to be understood to mean powers relating to private corporations, except where the words indicate a different intent.''

The decision in *Sumid* v. *City of Prescott, supra,* is based on the same reasoning.

It is true that the legislature has very broad powers over municipal corporations, but under the well-known rule these powers of regulation may not be delegated by the legislature to any other body, but must be exercised by the legislature itself in terms which are not reasonably susceptible of any other interpretation. Chapter 100, *supra,* nowhere mentions, or even suggests, that municipal corporations are affected thereby, and, indeed, many provisions thereof would be impossible of application to municipal corporations operating transportation lines.

We hold, therefore, (a) that the Constitution of Arizona does not directly, nor by implication, give to the Corporation Commission any jurisdiction over trans-

portation lines owned and operated by municipalities; (b) that section 6, article 15, of the Constitution, does not authorize the legislature to extend the jurisdiction of the Corporation Commission over such matters; and (c) that any regulation of municipal transportation lines which is permitted by the Constitution must be exercised directly by the legislature, and not by a delegation of powers to some other tribunal.

The judgment of the superior court of Maricopa county is in all things affirmed.

McALISTER, C. J., and ROSS, J., concur.