[Civil No. 4004. Filed June 9, 1938.]

[80 Pac. (2d) 390.]

CITY OF PHOENIX, a Municipal Corporation, Petitioner, v. WILSON T. WRIGHT, AMOS A. BETTS, and WILLIAM M. COX, Constituting the Corporation Commission of the State of Arizona, Respondents.

Mr. I. A. Jennings, City Attorney, Mr. Hess Seaman and Mr. Richard F. Harless, his Assistants, for Petitioner.

Mr. Joe Conway, Attorney General, Mr. W. E. Polley and Mr. J. M. Johnson, his Assistants, for Respondents.

Mr. E. O. Phlegar, Messrs. Cunningham & Carson, Mr. Harry O. Juliani and Mr. Fred A. Weller, *Amici Curiae.*

LOCKWOOD, J.—This is an application by the city of Phoenix, a municipal corporation, hereinafter called plaintiff, against Wilson T. Wright, Amos A. Betts, and William M. Cox, as the corporation commission of the state of Arizona, hereinafter called defendants, for a writ of prohibition, commanding them to desist from attempting to assume jurisdiction over plaintiff and its municipally owned and operated water system, in the distribution of water to consumers for compensation outside of its corporate limits. The

alternative writ was issued, and defendants cited to appear and show cause why it should not be made permanent. Defendants answered urging (a) that a writ of prohibition by this court did not lie in a case of the present character, and (b) that defendants had full jurisdiction over plaintiff in respect to the matter in controversy. The matter is now before us on the question of whether the alternative writ should be made permanent.

■ We consider first the question of whether prohibition lies in this kind of a case. In the case of *Van Dyke* v. *Superior Court,* 24 Ariz. 508, 211 Pac. 576, we quoted approvingly from the language of the Supreme Court of the United States in the case of *In re Rice,* 155 U. S. 396, 402, 15 Sup. Ct. 149, 39 L. Ed. 198, 201, as follows (24 Ariz., p. 519):

" 'Where it appears that a court whose action is sought to be prohibited has clearly no jurisdiction of the cause originally, or of some collateral matter arising therein, a party who has objected to the jurisdiction at the outset, and has no other remedy, is entitled to a writ of prohibition as a matter of right. But where there is another legal remedy by appeal or otherwise, or where the question of the jurisdiction of the court is doubtful, or depends on facts which are not made matter of record, or where the application is made by a stranger, the granting or refusal of the writ is discretionary.' "

And the same rule was previously upheld in *Crowned King Min. Co.* v. *District Court,* 7 Ariz. 263, 64 Pac. 439, and numerous other cases.

It appears from the petition that the only question raised thereby is one of jurisdiction, and that a determination of this case is of great importance both to plaintiff and all other municipalities of the state of Arizona which are operating municipally owned water plants outside of their city limits. Since this form

of proceeding is the one where the question raised can be finally settled more promptly than in any other manner, we think that even if plaintiff has a remedy by appeal or otherwise, which would ultimately determine the same issue, the writ should be granted unless there appear some affirmative reason why it cannot be. It is urged that this court has no jurisdiction to issue an original writ of prohibition by reason of the provisions of section 720, Rev. Code 1928, which reads, in part, as follows:

" . . . Except as herein provided, no court of this state shall have jurisdiction to enjoin, restrain, suspend, delay or review any order or decision of the commission, or to enjoin, restrain or interfere with the commission in the performance of its official duties, and the rules, regulations, orders or decrees fixed by the commission shall remain in force pending the decision of the courts; provided, that the writ of *mandamus* shall lie from the supreme court to the commission in all proper cases."

We have previously held in the case of *Johnson* v. *Betts,* 21 Ariz. 365, 188 Pac. 271, that section 720, *supra,* has reference only to decisions of the commission affecting public service corporations, and in the case of *Menderson* v. *City of Phoenix et al.,* 51 Ariz. 280, 76 Pac. (2d) 321, we held specifically that a municipal corporation while engaged in any of the occupations referred to in section 2 of article 15 of the Constitution of Arizona is not a public service corporation within the meaning of the Constitution. We think we properly exercised our discretion in granting the alternative writ.

We come then to the question on the merits, which is, Has the Arizona corporation commission jurisdiction over the acts of a municipal corporation owning and operating its own water plant while it is furnishing water for public purposes outside of its own

limits? We consider first whether a municipal corporation has the right to furnish water through its municipal water plant to consumers living outside of its corporate limits. We have had a similar question before us in the cases of *City of Tucson* v. *Sims,* 39 Ariz. 168, 4 Pac. (2d) 673, and *Crandall* v. *Town of Safford,* 47 Ariz. 402, 56 Pac. (2d) 660. In both of these cases we held, in substance, that the Constitution of Arizona had changed the rule formerly sustained by many cases, to the effect that municipal corporations might not engage in industrial pursuits outside of their own corporate limits, and in the last mentioned case we said (page 408):

" . . . There is, appellant urges, no specific constitutional or statutory authorization for such action, and since municipalities cannot exercise a governmental function except within their own limits, and, under section 5 of article 13 of the Constitution, can only engage in a business for which they may grant a franchise, that is, one within their own boundaries, they cannot themselves own or operate an enterprise beyond their borders. While, he admits, the Constitution was amended in 1912 in such a way as to provide that municipal corporations may engage in industrial pursuits, section 34, article 2, of the state Constitution, and the Legislature later provided that they could do so either within or without such limits, section 409, Revised Code of 1928, yet he contends neither of these provisions removed the restriction confining municipalities to those enterprises for which they might grant a franchise to a private person. In support of this position, he cites several decisions holding that a municipality may not operate a utility beyond its corporate limits, among which are these: [citing cases].

"This view, we think untenable, however. It should be kept in mind that section 34, art. 2, approved by the people in November, 1912, amended the Constitution and that it enlarged the powers conferred by section 5 of article 13, *supra.* And while it is true

that the legislature has on three separate occasions, namely, chapter 11, Laws of the First Special Session of 1912, chapter 31, Session Laws of 1921, and chapter 77, Session Laws of 1933, enacted legislation providing that municipal corporations may engage in any business an individual may follow 'by virtue of a franchise from such municipal corporation,' yet in doing so it seems plain that it overlooked the fact that section 34, article 2, gives municipalities the right to engage in industrial pursuits, without specifying any limitation whatever as to kind or character. Realizing this, it was held in effect in *City of Tombstone* v. *Macia,* 30 Ariz. 218, 245 Pac. 677, 682, 46 A. L. R. 828, that, following the adoption of section 34, *supra,* municipalities were no longer confined in engaging in business, to those particular enterprises for which a municipality might grant a franchise to an individual. This language was used:

" 'Every amendment or rewriting of said chapter 11, down to and including its final form in said chapter 31, seems to have been based on error, on a forgetting that the fundamental law had been changed to allow municipalities to engage in industrial pursuits, not only those pursuits for which the municipality might grant a franchise.'

"In *City of Tucson* v. *Sims,* 39 Ariz. 168, 4 Pac. (2d) 673, it was decided specifically that section 5, article 13, *supra,* does not prevent municipalities from furnishing water to users residing outside its boundaries. While section 34, article 2, was not referred to in that decision, it was pointed out that in operating its water system the city of Tucson was exercising a proprietary as distinguished from a governmental function, and that acts performed pursuant to this power are by the great weight of authority measured by the rules governing private corporations. The following excerpt from *Keever* v. *City of Mankato,* 113 Minn. 55, 129 N. W. 158, 160, 775, 33 L. R. A., N. S., 339, Ann. Cas. 1912A, 216, was quoted with approval:

" ' "When a municipality engages in a private enterprise for profit, it should have the same rights and be subject to the same liabilities as private corporations or individuals." ' "

"The same doctrine had been approved some years before in *Sumid* v. *City of Prescott,* 27 Ariz. 111, 230 Pac. 1103, 1104, in this language:

" 'Under the common law a municipal corporation exercising proprietary or business powers was regarded *quoad hoc* a private corporation, and was liable to the same extent and on the same principles as a private corporation.'

"If any doubt as to the right of the town of Safford or any municipality within the state to operate a distributing water system outside its boundaries had existed prior to December 14, 1934, it was removed at that time by the enactment of chapter 11, Session Laws of the Third Special Session of the Eleventh Legislature, which provided specifically in section 3 that in addition to the powers it may have, any municipality has the power to construct, improve, extend, operate, and maintain 'within or *without* the municipality' (italics ours) any undertaking, to issue its bonds to finance the costs thereof, and to pledge sufficient of the revenues derived therefrom to pay the bonds and the interest on them.

"It might be well to say that even in the absence of express authority, such as that conferred by chapter 11, it is generally held that a municipality may go outside its limits to distribute surplus water, light, power, or gas. [Citing cases.]"

It will be seen we have held that regardless, and in the absence, of any statutory authority, by virtue of the constitutional provisions a municipal corporation may furnish waters from its water system to consumers residing outside of its boundaries. We think the right of plaintiff to furnish water to consumers outside of its corporate limits is no longer open to question.

■■ But, it is urged by defendants, though this may be true, yet this court has held that in so doing municipalities act in their proprietary, as distinguished from their governmental, capacity, and it is argued from this premise that this subjects them to

the control of the corporation commission. We think the argument is plausible but untenable. If municipal corporations, in exercising the functions referred to in section 2, article 15, *supra*, of the Constitution, outside of their boundaries are acting in a proprietary capacity, they are equally acting in a proprietary capacity inside of such boundaries. In the case of *Sumid* v. *City of Prescott*, 27 Ariz. 111, 230 Pac. 1103, we discussed the meaning and effect of proprietary, as distinguished from governmental, functions of municipalities. We held that such corporations, when they engaged in private enterprises for profit, had the same rights and were subject to the same liabilities for their torts as were private corporations. It may be that in the absence of a constitutional inhibition, the legislature might make them subject to the jurisdiction of the corporation commission so far as their contracts, rights and management of business enterprises are concerned. But when the constitution speaks, all rules of the common law and all statutes which violate that document are utterly void and nugatory.

We have had the question of the jurisdiction of the corporation commission over municipal corporations engaged in carrying passengers for hire before us in the case of *Menderson* v. *City of Phoenix, supra.* Therein we said (51 Ariz., p. 283):

"It will be seen thereby that all corporations which are engaged in carrying passengers for hire, and all corporations operating as common carriers, are deemed public service corporations within the meaning of the Constitution, *with the express and specific exception of municipal corporations.* We think that no plainer language could have been used by the makers of the Constitution to state that the constitutional powers conferred upon the Corporation Commission, in regard to the government and regulation of public utilities, were not intended to, and did not,

include those owned and operated by municipal corporations of any character. Indeed,. while plaintiff presents an argument which might well have been addressed to the discretion of the Constitutional Convention, pointing out the terrible consequences which he believes will result to the public in case the Corporation Commission is not allowed to regulate municipal corporations operating public utilities, his contention that such constitutional power does exist is not very strenuous. We think it too clear for extended discussion that the Constitution not only does not expressly authorize the Corporation Commission to regulate municipal corporations which are operating public utilities, but that it, by necessary implication, forbids such regulation.''

Section 2, article 15, *supra,* by its express language, applies to the furnishing of water for any public purpose, in the same manner and to the same extent as it does to the carrying of passengers for hire, and we think it follows that the Constitution, by necessary implication, forbids the regulation by the corporation commission of municipal corporations which furnish water for public purposes to the same extent as it does municipal corporations which furnish transportation for hire. The limitation placed by the Constitution on the power of the corporation commission over municipal corporations is not predicated upon the place where they do business, but upon the fact that they *are* municipal corporations. Such being the case, if a municipal corporation may lawfully furnish water for public purposes to consumers outside of its boundaries, it is no more subject to regulation by the corporation commission in so doing than it is in the furnishing of water to those inside of its boundaries. The obvious spirit and purpose of section 2, article 15, *supra,* is to leave the regulation of municipal corporations, and their acts, where it has always been ever since such corporations have existed—in the hands of

the legislative branch of the government—instead of transferring their control to another agency created by the Constitution.

It is urged with great vehemence that unless this jurisdiction is given to the corporation commission, there are many thousands of citizens of Arizona who will be most grievously oppressed and without remedy. We think defendants are unduly alarmed as to the lack of remedy if such oppression does exist. As is pointed out by plaintiff in its brief, there are at least three remedies for those who may be dissatisfied with the rates, rules and regulations for the use of water from its plant, as fixed by plaintiff. In the first place, it must be remembered that plaintiff is not operating outside of its boundaries by an exclusive franchise prohibiting any competition. Any of the present consumers of its water are at liberty to secure water from any other source available, and we know, as a matter of fact, that many of those who live immediately adjacent to premises outside the city of Phoenix which are served by its water system, for years did secure their water from individual wells driven deep into the inexhaustible strata which lie beneath practically the entire Salt River Valley. Further, there is nothing to prevent the organization by any number of these consumers of a community water plant which may supply the needs of as many as desire to contribute thereto, without plaintiff having the power to prevent them from so doing. In the second place, as we have indicated previously, if it be deemed advisable to regulate the rates to be charged by municipal corporations from consumers of water outside of their corporate boundaries, the legislature has plenary power, except as limited by the Constitution, to make such regulations as it may see fit in the premises. But, should all these means fail, and should it appear that the corporation commission is the only

branch of government which is both willing and able to protect the rights of private citizens against the oppression of adjacent municipalities, and the people of Arizona are satisfied that this is so, the Constitution may be amended at any time to confer upon that commission the jurisdiction which they now seek to exercise in violation of its express language. We conclude, therefore, that under the Constitution of Arizona, as it now stands, the corporation commission has no jurisdiction to regulate the actions of a municipal corporation engaged in the service and delivery of water for public purposes to consumers either inside or outside of its corporate limits.

The alternative writ is made permanent.

McALISTER, C. J., and ROSS, J., concur.