641 P.2d 243

**COPPER COUNTRY MOBILE HOME PARK, an Arizona partnership; Hancor Properties, Inc., an Arizona corporation, Plaintiffs/Appellees,**

**v.**

**CITY OF GLOBE, a municipal corporation, Defendant/Appellant.**

**No. 2 CA–CIV 3929.**

Court of Appeals of Arizona, Division 2.

Dec. 7, 1981.

Rehearing Denied Jan. 20, 1982.

Review Denied Feb. 17, 1982.

Weyl, Guyer, MacBan & Olson by Barry A. MacBan, A. Craig Blakey, II and Daniel P. Jantsch, Phoenix, for plaintiffs/appellees.

William L. Tifft, Globe, for defendant/appellant.

## OPINION

BIRDSALL, Judge.

The plaintiff/appellee, Copper Country Mobile Home Park, a partnership, commenced this action in the trial court to enforce a contract obligation of defendant/appellant, City of Globe, a municipal corporation. Plaintiff/appellee, Hancor Properties, Inc., an Arizona corporation, was later added as a plaintiff. The trial court granted the appellees' motion for summary judgment and this appeal was taken from that judgment.

Appellant urges that the trial court erred:

1) In finding the city bound by the contract, and

2) In determining that there was no disputed material fact which would preclude summary disposition.

We find no error and affirm.

On December 16, 1974, under a written agreement with Holgate Development Corporation, the predecessor of appellee Hancor, the city acquired real property consisting of a sewage treatment plant and related sewer system, all located outside its corporate limits. In consideration the city agreed to provide sewer service to the appellees "without any charge of any kind except for a monthly service fee equal in all respects to the fee for like or equivalent service charged by the grantee (city) within the city of Globe." On the same day, the parties also made a supplemental agreement that terminated as of July 1, 1976, but its provisions are not relevant to this decision.

At all material times the city charged $1.00 per month per home for sewer service to customers within its corporate limits. In April, 1980, the city adopted an ordinance providing for a charge of $10.00 per month to those receiving sewer service outside the corporate boundaries and within the area served by appellee's former system, i.e., those homes situated on the land described in the 1974 agreement. The rate for city residents continued to be $1.00. This action gave rise to the lawsuit.

The trial court made the following findings in the judgment:

" . . . that Defendant City of Globe is rendering to plaintiffs a sewer service like or equivalent to that sewer service rendered within the City of Globe, that the attempt to charge more for the service from plaintiffs than that charged to other customers within the City of Globe is in violation of the contractual obligation entered into by said Defendant City and plaintiffs' predecessors in interest; court further specifically finds there is no material issue of fact to be decided herein and that plaintiffs are entitled to judgment as a matter of law against defendant."

The judgment permanently restrains appellant from charging appellees for sewer service at a rate in excess of that charged for sewer service to residents within the City of Globe.

The city concedes that A.R.S. § 9–522 gives the city the power and authority to purchase and operate a sewer system outside its geographical limits. Subparagraph (A)(1) of that section provides:

"In addition to its other powers, a municipality may:

1. Subject to the requirements and restrictions of §§ 9–515 through 9–518, *within or without its corporate limits*, construct, improve, reconstruct, extend, operate, maintain and acquire, by gift, purchase or the exercise of the right of eminent domain, a utility undertaking or part thereof, and acquire in like manner land, rights in land or water rights in connection therewith." (emphasis added)

A.R.S. § 9–521(5)(a) defines the words "utility undertaking" to include a sewer system. Although § 9–522 appears in an article entitled "Municipal Bonds for Funding Utilities" and is itself entitled "Power to issue bonds," our supreme court has held that the statute authorizes the acquisition and operation of a sewer system outside corporate limits even when, as in this case, no bonds are issued. *City of Scottsdale v. Municipal Court of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1967).

In support of its argument that it was not bound by the agreement, the appellant makes several arguments, which we will consider in the order presented.

First, the city contends the agreement was a violation of Article 13, Section 6 of the Arizona Constitution, which is entitled "Franchises; restrictions," and provides:

"No grant, extension or renewal of any franchise or other use of the streets, alleys, or other public grounds, or ways, of any municipality shall divest the state or any of its subdivisions of its or their

control and regulation of such use and enjoyment; *nor shall the power to regulate charges for public services be surrendered*; and no exclusive franchise shall ever be granted." (emphasis added)

■ The city argues that the agreement with appellees constituted a surrender of its power to regulate charges for sewer service. This argument must fail. The cited constitutional provision concerns the power to regulate charges made by a separate public or private entity providing public services, i.e., a public utility such as Arizona Public Service. Such "public service corporations" are currently regulated by the constitutionally created Corporation Commission, but Article 15, Section 3, of the Arizona Constitution authorizes the legislature to delegate that regulatory power to municipalities. If the legislature ever does so, the emphasized portion of Article 13, Section 6, is intended to prevent the further delegation of that police power by the municipalities. At the time of Arizona's statehood, the United States Supreme Court had recently indicated that such re-delegation of the state's regulatory police power, accomplished by unalterably fixing rates for the life of a franchise, was permissible as a matter of federal constitutional law, but only if expressly authorized by the supreme legislative power of the state. *Home Telephone & Telegraph Co. v. Los Angeles*, 211 U.S. 265, 29 S.Ct. 50, 53 L.Ed. 176 (1908). In apparent reaction to that decision, Article 13, Section 6, was adopted with its present prohibition as a declaration that permission to re-delegate the regulatory power should never be given by the legislature. Since the legislature has never initially endowed this state's municipalities with the power mentioned in Article 13, Section 6, and since this case does not involve a franchise, but has instead arisen from the city's own undertaking to provide sewer service, the language relied upon by the city is currently of purely academic interest and is wholly inapplicable to this case.

■ The city next argues that since uncontroverted evidence, presented in affidavit form, shows the charge of $10.00 per month per user is necessary to meet the expense of furnishing sewer service to appellees, the city has agreed to violate A.R.S. § 9–530(A) and cannot be bound by the illegal agreement. That statute provides:

"The governing body of the municipality issuing the bonds shall prescribe service charges, and shall revise them when necessary, so that a utility undertaking for which the bonds were issued shall always remain self-supporting with revenue sufficient:

1. To pay when due all bonds, and interest thereon, for the payment of which the revenue has been pledged, encumbered or charged.

2. *To provide for all expenses of operation, maintenance, expansion and replacement of facilities.*

3. To provide reasonable reserves for such purposes." (emphasis added)

This statute is inapplicable since its requirements clearly apply solely to the obligation of a city which has issued bonds for an improvement to make sufficient charges to provide for the retirement of the bonds. This is not such a case.

■ Appellant finally contends, in support of its first proposition, that the subject activity was a governmental function of the city and that the previous mayor and council could not bind future councils by their actions. It concedes that if this was a proprietary function this argument is inapropos, since a municipality is bound by contracts made by its officials when the subject of the contract involves a proprietary activity. *City of Tucson v. Sims*, 39 Ariz. 168, 4 P.2d 673 (1931).

■ Establishing rates to be charged for sewage disposal for customers within the corporate limits of a city is a governmental function. *See* 10 McQuillan, *Municipal Corporations*, § 29.101, p. 467 (3d Ed. 1970); *Johnson v. State*, 107 Ga.App. 16, 128 S.E.2d 651 (1962). The latter case distinguishes between the operation of an electrical distribution system, a proprietary function, and the fixing of rates for the electric service, a governmental activity.

The operation and maintenance of a sewage system by a municipality is an exception to the rule that in the operation of a public utility the city acts in a proprietary capacity. Rhyne, *The Law of Local Government Operations*, § 23.8 pp. 650–1 (1980). Our supreme court held in *City of Scottsdale v. Municipal Court of Tempe, supra*, that the operation of a sewage disposal plant is a governmental function. *But see City of Tucson v. Sims, supra*, holding that the City of Tucson acted in a proprietary capacity in operating a water system. *Sims* would be analogous to the instant appeal except that we are concerned here with sewer service rather than water.

In the instant case, however, we must also consider that the contract calls for sewer service to *non-residents* of the city. Does this make the appellant's operation of the system proprietary as opposed to governmental? We believe it does. A governmental function is generally recognized as one undertaken because of a duty imposed on the city for the welfare or protection of its citizens. Rhyne, *supra*, § 4.6. Although it can be argued that the acquisition of the sewage facility was good future planning for the needs of the city, nevertheless, the appellant is under no duty, except contractual, to furnish any service to appellees. We find this to be the crux of the matter. The function of providing sewer service to appellees was proprietary and not governmental and the city is obligated under its contract. Thus in *Tronslin v. City of Sonora*, 144 Cal.App.2d 735, 301 P.2d 891 (1956), a contract which gave the city rights of way for sewer outside the city in exchange for free sewer connections was held enforceable. *See also* 11 McQuillan, *supra*, § 31.29(a), p. 224, § 31.30(a), p. 230:

> "Express contracts, however, pertaining to sewer charges are frequently made, particularly with respect to the use of municipal sewers lying outside the corporate limits, and, if in compliance with applicable laws and in other respects valid, such agreements are enforced according to their terms."

Except that it involved furnishing water (not sewer service) to users outside the city, *City of Phoenix v. Kasun*, 54 Ariz. 470, 97 P.2d 210 (1939), would be controlling. In *Kasun* the court had to determine whether the plaintiffs' right to receive water was contractual. If the plaintiff there had a right to the water, other than by contract, then the court could inquire into the reasonableness of the charges; otherwise it could not. In support of its holding the supreme court quoted with approval from *Childs v. City of Columbia*, 87 S.C. 566, 70 S.E. 296, 34 L.R.A. (N.S.) 542, "It follows that the plaintiff, as a mere nonresident, had no rights whatever against the city, except such as he may have acquired by contract. In other words, the city was under no public duty to furnish water to the plaintiff at reasonable rates, or to furnish it at all." 54 Ariz. at 478–479, 97 P.2d at 214.

Thus, the corollary—the city has no governmental obligation to provide for persons living outside its territorial boundaries. Therefore the contract involves the performance of a proprietary function and the city is bound by contractual obligations the same as a private corporation. *City of Phoenix v. Kasun, supra*, 54 Ariz. at 476, 97 P.2d at 213. All of the authorities cited by appellant deal with services furnished to persons living within the confines of the city. *See Johnson v. State, supra; East St. Louis & Interurban Water Co. v. City of Belleville*, 360 Ill. 490, 196 N.E. 442 (1935).

Appellant urges that a disputed material fact existed and therefore the trial court erred in granting summary judgment. We disagree.

The contract with appellees required the city to provide sewage service for appellees and their successors "without any charge of any kind except for a monthly service fee equal in all respects to the fee *for like or equivalent service* charged by the city within the city of Globe." In an affidavit filed in opposition to appellees' motion, the Globe City Manager states, in part:

> "That there are no like or equivalent services provided to any citizen within the City of Globe."

This statement is, of course, the affiant's conclusion. The only facts within his affidavit which appellant argues support the conclusion pertain to the relative size, costs, and means of financing the two systems. The record also contains a letter from a former city manager giving the same opinion.

We conclude, as a matter of law, that the phrase in the contract "like or equivalent service," is unambiguous and means the taking of sewage from the customer's home. This is the service provided to both residents and non-residents. It is clearly the service in the contemplation of the parties when the contract was made. Even if relevant, there is no showing that the size of the systems, cost, or means of financing is different now than in 1974. Any dispute about this "fact" is not genuine.

Affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.