[Civil No. 3692.   Filed April 1, 1936.]

[56 Pac. (2d) 660.]

STAN CRANDALL, Appellant, v. TOWN OF SAF-
FORD, a Municipal Corporation, et al., Appellees.

Messrs. Dougherty & Dougherty, for Appellant.

Mr. Jesse A. Udall, for Appellees.

McALISTER, J.—This is an appeal by Stan Crandall from a judgment dismissing a complaint filed by him against the town of Safford and its officers in which he sought an order restraining and enjoining them from proceeding with certain contemplated municipal improvements, from issuing the revenue bonds of the city as security for the funds it proposed to borrow from the federal government for this purpose, and from calling a municipal election to authorize the city and its governing body to take such action.

It appears from the record that in the summer of 1935 the town of Safford, desiring to own and operate its own water system, decided that it could do so by taking advantage of the federal government's offer to advance to cities, municipalities, school districts, drainage districts, etc., funds to be used for public enterprises that were beneficial to the political subdivision concerned and at the same time helpful in reducing unemployment and in restoring purchasing power of the people so greatly impaired at that time as a result of the depressed economic condition of the

country. The water plant then supplying the town of Safford was owned by the Arizona Edison Company, a public service corporation. To purchase it and make the enlargements and improvements needed required funds in the sum of $400,000, and the only source of revenue in this amount then available to it was one of the agencies of the federal government, particularly the Federal Emergency Administration of Public Works, which was created by the President of the United States, pursuant to an Act of Congress (40 U. S. C. A., § 401 et seq.). The condition upon which the government offers to cities or other political units funds for such enterprises is that 55 per cent. of the amount advanced be returned and its repayment secured by the general obligation, revenue or special assessment bonds of the political unit involved, the remaining 45 per cent. constituting a direct gift or grant to the recipient.

To comply with the requirements of this federal agency for the purpose of procuring the funds with which to carry out the contemplated improvements, the mayor and common council of the town of Safford on June 15, 1935, adopted Resolution No. 18, declaring it to be the intention of the town to call a bond election for the purpose of submitting to its qualified electors the question whether it should borrow from the Federal Emergency Administration of Public Works the sum of $400,000 for financing the purchase, enlargement and improvements of the water system then serving it and secure the repayment of 55 per cent. thereof, or $220,000, by issuing its revenue bonds in that sum, payable wholly and exclusively out of a fixed amount of the revenue derived from its water plant and system, the bonds to constitute a first and paramount lien of the amount of the revenue from the water system thus pledged to their payment.

The remaining $180,000, or 45 per cent. of the loan, being a gift or grant, is not to be repaid or evidenced by bonds.

The resolution of intention discloses that the assessed valuation of the property situated within the corporate limits of the town of Safford in 1935 was $979,388 and that the town has no issued or outstanding bonds, warrants or other indebtedness except some improvement bonds; that it contemplates purchasing for $100,000 the Arizona Edison Company's entire water supply system, consisting of a reservoir on Mt. Graham, adjacent to Safford, a pipe line leading from there to said town, the distributing system within the corporate limits of Safford, as well as that outside such limits which includes a pipe line to the adjoining town of Thatcher and the distributing system located therein; that it proposes to use the other $300,000 for these purposes: To construct and install an underground water collecting system on Bonita Creek outside the limits of Safford and install a pipe line from there to Safford; to repair, improve, extend and reconstruct the water plant and distributing system both in and outside the town of Safford, as well as that both in and outside the corporate limits of the town of Thatcher.

Within a short time after the adoption of Resolution No. 18, Stan Crandall, a qualified elector and real property taxpayer of the town of Safford, filed in the superior court of Graham county an action seeking to restrain the town and its officers from proceeding further with the proposed purchase of the water plant in question and the improvements designated therein, and as ground therefor alleged that the defendants were without power or authority in the premises and that the proposals, as set forth

in Resolution No. 18, are illegal, void, and unconstitutional for these reasons:]

(1) That, even though the town of Safford has no outstanding bonds, warrants or other indebtedness, the assessed valuation of the property within its corporate limits, as shown by its assessment roll for 1935, is only $979,388, and the $220,000 it seeks to borrow exceeds by over $33,000 the 4 per cent. plus 15 per cent. of its assessed valuation, or $186,083.72, for which it can, under section 8, article 9, become indebted.

(2) That the town of Safford has no power or authority to make the principal or interest upon revenue bonds issued by it payable exclusively from the net revenue arising from the operation of the water system instead of from gross revenue arising therefrom.

(3) That the town of Safford has no power or authority to construct and operate a public utility for distribution purposes outside its corporate limits, and especially within the corporate limits of the town of Thatcher, another municipality.

(4) That chapter 11, Third Special Session of the Eleventh Legislature, approved December 14, 1934, pursuant to which appellees are acting in their effort to purchase the water works and make the improvements contemplated, is illegal, void and in conflict with section 8, article 9, and section 6, article 13, of the Constitution of the state of Arizona; the former limiting the amount for which a city, town, county, school district or other municipal corporation may become indebted, and the latter providing that neither the state nor any of its subdivisions shall ever be divested of the control or use of the streets of any municipality and that their power to regulate the

charges for public services shall never be surrendered.

To this complaint the defendants filed a general demurrer which was sustained, and the court, following plaintiff's announcement that he would stand on his complaint, entered judgment in favor of defendants, and the plaintiff appeals therefrom.

The proposition upon which appellant chiefly relies is that by issuing revenue bonds for $220,000, when its assessed valuation was only $979,388, the town of Safford is incurring an indebtedness exceeding by over $33,000 the 4 per cent. plus 15 per cent. of the assessed value of the taxable property within its boundaries, and that in taking such action it is violating section 8, article 9, of the Constitution of Arizona which limits to these percentages the indebtedness it may incur. If money borrowed for the purpose of financing the enterprise in question were payable from the general funds of the town, or from taxes levied on the taxable property therein, the contention of appellant would be correct, but, inasmuch as the bonds are payable solely from the revenue to be derived from the operation of the water system and the right to look elsewhere or to compel the exercise of the taxing power for their satisfaction is specifically prohibited, the $220,000 does not constitute an indebtedness of the town of Safford within the meaning of the limitation clause of section 8, article 9, of the Constitution. This precise question was passed on only a few days ago in the case of *Guthrie* v. *City of Mesa, ante,* p. 336, 56 Pac. (2d) 655. It was there pointed out that this view is upheld by the great weight of authority, a number of decisions on the question being cited.

The next proposition contended for, namely, that the town of Safford has no power or authority

to make the revenue bonds issued by it payable exclusively from the net as distinguished from the gross income arising from the operation of its water system, is likewise without merit, as was pointed out in *Guthrie* v. *City of Mesa, supra.*

Several contentions are made in this case, however, that were not suggested in *Guthrie* v. *City of Mesa, supra,* and one of these is that municipalities organized under a general charter, as was the town of Safford, have no power under the Constitution and statutes of this state to construct, operate or control public utilities for distribution purposes outside of their corporate limits. There is, appellant urges, no specific constitutional or statutory authorization for such action, and since municipalities cannot exercise a governmental function except within their own limits, and, under section 5 of article 13 of the Constitution, can only engage in a business for which they may grant a franchise, that is, one within their own boundaries, they cannot themselves own or operate an enterprise beyond their borders. While, he admits, the Constitution was amended in 1912 in such a way as to provide that municipal corporations may engage in industrial pursuits, section 34, article 2, of the state Constitution, and the legislature later provided that they could do so either within or without such limits, section 409, Revised Code of 1928, yet he contends neither of these provisions removed the restriction confining municipalities to those enterprises for which they might grant a franchise to a private person. In support of this position, he cites several decisions holding that a municipality may not operate a utility beyond its corporate limits, among which are these: *Stauffer* v. *East Stroudsburg,* 215 Pa. 143, 64 Atl. 411; *City of Gainesville* v. *Dunlap,* 147 Ga. 344, 94 S. E. 247; *Mulville* v. *City of San*

*Diego,* 183 Cal. 734, 192 Pac. 702; *Richards* v. *City of Portland,* 121 Or. 340, 255 Pac. 326.

This view, we think untenable, however. It should be kept in mind that section 34, article 2, approved by the people in November, 1912, amended the Constitution and that it enlarged the powers conferred by section 5 of article 13, *supra.* And while it is true that the legislature has on three separate occasions, namely, chapter 11, Laws of the First Special Session of 1912, chapter 31, Session Laws of 1921, and chapter 77, Session Laws of 1933, enacted legislation providing that municipal corporations may engage in any business an individual may follow ''by virtue of a franchise from such municipal corporation,'' yet in doing so it seems plain that it overlooked the fact that section 34, article 2, gives municipalities the right to engage in industrial pursuits, without specifying any limitation whatever as to kind or character. Realizing this, it was held in effect in *City of Tombstone* v. *Macia,* 30 Ariz. 218, 245 Pac. 677, 682, 46 A. L. R. 828, that, following the adoption of section 34, *supra,* municipalities were no longer confined in engaging in business, to those particular enterprises for which a municipality might grant a franchise to an individual. This language was used:

''Every amendment or rewriting of said chapter 11, down to and including its final form in said chapter 31, seems to have been based on error, on a forgetting that the fundamental law had been changed to allow municipalities to engage in industrial pursuits, not only those pursuits for which the municipality might grant a franchise.''

In *City of Tucson* v. *Sims,* 39 Ariz. 168, 4 Pac. (2d) 673, it was decided specifically that section 5, article 13, *supra,* does not prevent municipalities from furnishing water to users residing outside its boundaries.

While section 34, article 2, was not referred to in that decision, it was pointed out that in operating its water system the city of Tucson was exercising a pro prietary as distinguished from a governmental function, and that acts performed pursuant to this power are by the great weight of authority measured by the rules governing private corporations. The following excerpt from *Keever* v. *City of Mankato,* 113 Minn. 55, 129 N. W. 158, 160, 775, Ann. Cas. 1912A 216, 33 L. R. A. (N. S.) 339, was quoted with approval:

" 'When a municipality engages in a private enterprise for profit, it should have the same rights and be subject to the same liabilities as private corporations or individuals.' ' "

The same doctrine had been approved some years before in *Sumid* v. *City of Prescott,* 27 Ariz. 111, 230 Pac. 1103, 1104, in this language:

"Under the common law a municipal corporation exercising proprietary or business powers was regarded *quoad hoc* a private corporation, and was liable to the same extent and on the same principles as a private corporation."

If any doubt as to the right of the town of Safford or any municipality within the state to operate a distributing water system outside its boundaries had existed prior to December 14, 1934, it was removed at that time by the enactment of chapter 11, Session Laws of the Third Special Session of the Eleventh Legislature, which provided specifically in section 3 that in addition to the powers it may have, any municipality has the power to construct, improve, extend, operate and maintain "within or *without* the municipality" (italics ours) any undertaking, to issue its bonds to finance the costs thereof, and to pledge sufficient of the revenues derived therefrom to pay the bonds and the interest on them.

It might be well to say that even in the absence of express authority, such as that conferred by chapter 11, it is generally held that a municipality may go outside its limits to distribute *surplus* water, light, power or gas. 19 R. C. L. 788; *City of Tucson* v. *Sims, supra; Orme* v. *Salt River Valley etc. Assn.,* 25 Ariz. 324, 217 Pac. 935; *Milligan* v. *Miles City,* 51 Mont. 374, 153 Pac. 276, L. R. A. 1916C 395; *County of Larimer* v. *City of Ft. Collins,* 68 Colo. 364, 189 Pac. 929; *Pikes Peak Power Co.* v. *Colorado Springs,* 105 Fed. 1, 44 C. C. A. 333.

Appellant contends further that even though a municipality existing under a general charter may operate a water distributing system outside its limits, it cannot do so within the corporate boundaries of another municipal corporation, and this, he urges, is true whether it sells the water to the other municipality itself, the right to collect from those using it therein belonging to the latter, or whether it sells directly to and collects from the users themselves. To do either, according to appellant, is to exercise governmental and proprietary functions within the corporate limits of the second municipality, which under the law belongs exclusively to it, but he cites no authority in support of this contention, reliance being had solely on those few cases holding that a municipality cannot operate outside its own limits. We are unable, however, to see wherein it is material that some of those served live not merely outside the corporate limits of the operating municipality, but within the boundaries of another municipal corporation. Since there is no question of the municipality's right to operate outside its corporate limits, it is not important where those it serves beyond its border reside, whether within or without some other municipal corporation. If the operating municipality is

able to obtain acceptable terms from one it desires to serve from its surplus or excess water supply, we know of nothing that would stand in the way of its doing so, any more than would be true in the case of a private corporation that might wish to operate its water system outside the limits of the municipality granting its franchise. It should not be overlooked that in owning and operating its water plant the municipality is acting in a business or proprietary and not a governmental capacity. Subdivision 3 of the syllabus to *City of Colorado Springs* v. *Colorado City,* 42 Colo. 75, 94 Pac. 316, reads as follows:

"It is within the power of a city to make a contract with another city to furnish it water, where it will not interfere with the supply of water to its own inhabitants, since the making of such a contract is not an exercise of its legislative or governmental powers, but is for the private advantage of the city and its inhabitants."

It appears that section 8 of the Revenue Bond Act of 1934 authorizes municipalities to adopt resolutions containing covenants, among other things, relative to "(g) the terms and conditions upon which the holders of said bonds or any proportion of them or any trustee therefor shall be entitled to the appointment of a receiver, who may enter and take possession of said undertaking, operate and maintain the same, prescribe charges, and collect, receive and apply all revenue thereafter arising therefrom in the same manner as the municipality itself might do," and that Resolution of Intention No. 18 contains a provision to this same effect. It is the contention of appellant that a municipality may not agree in advance to the appointment of a receiver for public property and that the parties cannot by agreement confer jurisdiction to do this, because such appointment would

contravene section 6, article 6, of the state Constitution, giving superior courts jurisdiction in all cases in equity. Appellee insists, however, that the term "receiver," as here used, does not refer to one appointed by a court in pending litigation, but rather to one who by agreement of the parties takes charge of the property as their agent or trustee, and in support of this he calls attention to the fact that Resolution No. 18 provides that the foregoing section shall not be construed as limiting the right of the holder of a bond to apply for the appointment of a receiver in the discretion of the court. It occurs to us that appellees' view is correct, for under no condition could the parties by their agreement divest the court of jurisdiction to appoint a receiver upon a proper showing. *Lewis* v. *Shaw,* 77 Cal. App. 99, 246 Pac. 86.

The further proposition is advanced that a municipality may not by contract authorize a receiver to operate a utility owned by it and prescribe the charges therefor. Since the Constitution (art. 15, § 3) confers on the Corporation Commission the power to prescribe rates for public service corporations, except those municipally owned and managed (*State* v. *Tucson Gas etc. Co.,* 15 Ariz. 294, 138 Pac. 781), and since the town of Safford proposes to construct and operate a water system without as well as within its corporate limits, appellant contends that the portion of the system outside its limits will be a public service corporation and subject to regulation by the Corporation Commission, and that, this being true, the provision in chapter 11, *supra,* and in the Resolution of Intention No. 18, giving the receiver this right, renders both invalid. It is unnecessary to determine here whether the municipality itself or its agent or trustee, or the Corporation Commission, has

this power, for in no event could this question affect the validity of the bonds. Who controls the outside portion of the water system may be determined when a question involving it arises.

■ The validity of chapter 11, Session Laws of the Third Special Session of the Eleventh Legislature, the "Revenue Bond Act of 1934," which by its own terms expires March 1, 1937, is questioned in the last proposition, but we think it unnecessary to consider it at any length, for the reason that the various provisions of it which appellant challenges, with one or two minor exceptions, such as the diverting of funds from the water system for the payment of insurance and judgments in tort actions, are those permitting municipalities to pursue the course the town of Safford has followed in this instance and which we have held in no sense invalid or unconstitutional. The act, therefore, in so far as its provisions have been called to our attention, contravenes the Constitution in no respect.

The judgment is affirmed.

ROSS, J., concurs.

LOCKWOOD, C. J., Specially Concurring.—This court has laid down certain principles of constitutional law in the cases of *Board of Regents* v. *Sullivan*, 45 Ariz. 245, 42 Pac. (2d) 619, and *Guthrie* v. *City of Mesa, ante,* p. 336, 56 Pac. (2d) 655, just decided. These principles have, therefore, become the law of Arizona and are binding until such time as they are changed or modified by the court. A logical application thereof will undoubtedly lead to the conclusion reached by the majority opinion in the present case, and I, therefore, concur in the result on the ground that the matter is *stare decisis*.