[Civil No. 4047. Filed October 31, 1938.]

[83 Pac. (2d) 789.]

A. M. CRAWFORD, Appellant, v. CITY OF PRESCOTT, a Municipal Corporation, W. H. TIMERHOFF, FLOYD WILLIAMS, D. W. SHIVERS, ROY D. YOUNG, M. L. TRIBBY and P. H. MILLER, Appellees.

472

Messrs. Favour & Baker, for Appellant.

Mr. E. C. Locklear, for Appellees.

McALISTER, C. J.—On the 18th of July, 1938, the mayor and common council of the City of Prescott, pursuant to the provisions of the Revenue Bond Act of 1934 (Laws 1934, Third Special Session, Chapter 11), as amended by chapter 12, Laws of 1937, passed a resolution expressing an intention to purchase certain real property located in that city for the purpose of converting it into a Civic Recreational Area and included in the resolution a provision submitting to the real property taxpayers of Prescott at a special election to be held on August 13, 1938, this question: Shall the mayor and common council of the City of Prescott be authorized to issue and sell its negotiable serial coupon bonds in the aggregate amount of $65,000 for the purpose of purchasing civic recreational sites and constructing thereon improvements of a recreational nature, the bonds to bear interest not exceeding 4 per cent. per annum, both principal and interest to be paid solely from the revenues pledged to the payment thereof?

A majority of those voting at that election was in favor of the issuance and sale of the bonds, and on October 7, 1938, while the mayor and common council were preparing to carry out this purpose, A. M. Crawford, a resident and taxpayer of the City of Prescott, filed in the Superior Court of Yavapai County a complaint setting up certain facts and praying that because of them the city and its officers be restrained from issuing and selling its bonds and from pledging the gross income, revenues, rents and profits to be derived from the Civic Recreational Area in payment thereof.

The complaint, in addition to the foregoing, alleges these facts: That the assessed valuation of the taxable property located in the City of Prescott is $4,644,915 and the outstanding indebtedness of the city $815,-

279.99, which consists entirely of bonds issued for the sole purpose of constructing water works and sewers; that the sum of $815,279.99 equals more than 15 per cent. of the assessed valuation of the property located within the city; that in consequence of this, if the officers of the city are permitted to issue and sell its bonds in the sum of $65,000 and pledge the gross income, revenues, rents and profits derived from the Civic Recreational Area purchased and built with those funds, the cost of maintenance of the Recreational Area and the obligation to pay the bonds will create an indebtedness against the city in excess of the limitation provided in section 8, article 9 of the Constitution of Arizona, and the plaintiff, a resident and real property owner and taxpayer, will be compelled to pay additional taxes to the city to take care of the indebtedness incurred by the issuance and sale of said bonds and for the upkeep of the Civic Recreational Area in question. The prayer was that the defendants be restrained from issuing and selling the bonds and from pledging for the payment thereof the gross income, revenues, rents and profits to be derived from the Civic Recreational Area constructed with the proceeds of the bonds.

To this complaint the defendants interposed a general demurrer which was sustained. Thereupon the court, following an announcement by the plaintiff that he would not amend but stand on his pleading, dismissed the complaint, and this is the order the plaintiff has brought here for review.

The constitutional provision limiting the amount for which an incorporated city or town may become indebted and upon which the claim of plaintiff is based, section 8, article 9, reads, so far as pertinent, as follows:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding four per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of a majority of the property taxpayers, who must also in all respects be qualified electors, therein voting at an election provided by law to be held for that purpose, . . . provided, further, 'that any incorporated city or town, with such assent, may be allowed to become indebted to a larger amount, but not exceeding fifteen per centum additional, for supplying such city or town with water, artificial light, or sewers, when the works for supplying such water, light or sewers are or shall be owned and controlled by the municipality.' "

The resolution of intention was passed by the mayor and common council of the city and the assent of a majority of its taxpayers given for the purpose of issuing and selling the bonds pursuant to the provisions of the Revenue Bond Act of 1934, Chapter 11 of the Laws of the Third Special Session of that year, as amended by Chapter 12, Session Laws of 1937, and this means, as the bonds themselves should recite, that they are payable out of the income, revenues, rents and profits derived from the Civic Recreational Area to be constructed with their proceeds and not out of the city's revenue derived from any other source, including the property tax. Sections 13 and 16, Chapter 11, Third Special Session, 1934; sections 55z1 and 555z4, Revised Code Supplement, 1936. Appellant contends, however, that even though it be true that the bonds are payable solely from this source, they nevertheless constitute an obligation of the City of Prescott, and since its bonded indebtedness for water and sewerage is already more than 15 per cent. of its taxable property, the amount the foregoing provision of the Constitution permits it to incur for that purpose, the

issuance and sale of the bonds violates this constitutional limitation and is, therefore, prohibited.

■ This contention is unsound for two reasons: The first is that according to the allegations of the complaint the bonds, even though issued and sold as city obligations and made payable out of taxes levied and collected by the city, would not increase the city's indebtedness beyond the limitation fixed in section 8, article 9. While it is true that the $815,279.99 it now owes for its water and sewer bonds is more than 15 per cent. of $4,644,915, the present value of its taxable property, yet this sum, with the $65,000 the city now desires to issue added to it, does not exceed 15 per cent. plus 4 per cent. of this total valuation, namely, $882,533.85, and this must occur before the limitation of the Constitution applies. *Buntman* v. *City of Phoenix*, 32 Ariz. 18, 255 Pac. 490; *Allison* v. *City of Phoenix*, 44 Ariz. 66, 33 Pac. (2d) 927, 93 A. L. R. 354.

■ The other reason, the one with which we are here chiefly concerned, is that while it is true that the bonds are to be issued and sold by the city, they are nevertheless payable solely from the gross income, revenues, rents and profits to be derived from the Civic Recreational Area to be constructed with the proceeds of their sale and, hence, do not constitute an indebtedness of the city within the purview of section 8, article 9. Such is the rule followed by the great weight of authority, a clear statement of which is found in the annotation in 72 A. L. R. at page 688 where the annotator uses this language:

"According to the great weight of authority, a municipality or other political subdivision does not create an indebtedness or liability, within the meaning of a constitutional or statutory debt limitation, by purchasing property to be paid for wholly out of the income or revenue to be derived from the property purchased."

This specific question was first considered by this court in *Board of Regents* v. *Sullivan,* 45 Ariz. 245, 42 Pac. (2d) 619, and it was there held that under the "Educational Institutions Act of 1934," Chapter 7, Third Special Session of the Eleventh Legislature, the bonds issued by the University of Arizona to be paid solely from the revenues to be derived from the improvements made at the university with the proceeds of the sale of the bonds did not constitute an obligation of the state of Arizona. The court made this statement (p. 260):

"The bonds are not payable from taxes, but solely from the revenues of the University; they do not constitute a debt, direct or contingent, within the constitutional prohibition limiting the state's indebtedness."

This rule has been followed in two decisions since, *Guthrie* v. *City of Mesa,* 47 Ariz. 336, 56 Pac. (2d) 655, and *Crandall* v. *Town of Safford,* 47 Ariz. 402, 56 Pac. (2d) 660, and we see no occasion for departing from it.

The plaintiff makes the further contention that pledging the gross income, revenues, rents and profits to be derived from the Civic Recreational Area for the payment of the principal and interest of the bonds will create an indebtedness against the city in excess of the limitation provided in section 8, article 9, to the extent that it will be necessary for the city to maintain the area, and that he is, therefore, entitled to an order restraining the city's officers from issuing and selling its Civic Recreational bonds. In other words, his position is that if the gross income from the recreational area is devoted wholly to the payment of the principal and interest of the bonds, there will be nothing for the upkeep and maintenance of the recreational area's activities, and that these will necessarily become a charge against the city which its taxpayers must meet

each year, thus creating, within the meaning of section 8, article 9 of the Constitution, an indebtedness against the city.

■ Whether this be correct, we do not undertake to say because it is clear from the Revenue Bond Act of 1934, as amended in 1937, under which the city is proceeding to issue and sell its Civic Recreational bonds, that its mayor and common council must prescribe such charges in connection with the various activities established on the recreational area that it will be self-supporting; that is, pay the principal and interest of the bonds and also the entire expense of its operation and maintenance. Section 7, chapter 11 of that act (Rev. Code Supp. 1936, sec. 555u). This specific question was considered by us in *Guthrie* v. *City of Mesa, supra,* and the following statement made at that time is particularly applicable to the situation confronting us here (at p. 346):

"But while these various acts permit the pledging of the whole or any portion of the income from a utility to take care of the bonds and interest as they mature, section 7 of 'the Revenue Bond Act' makes it the duty of the governing body of the municipality issuing the bonds to prescribe charges and revise them 'from time to time whenever necessary so that any undertaking for which said bonds were issued shall constitute and always remain self-supporting with revenue sufficient to pay when due all bonds and interest thereon, for the payment of which such revenue is or shall have been pledged, encumbered or charged, to provide for all expenses of operation and maintenance, and to provide reasonable reserves for all of said purposes.' And in the bonds themselves appears a provision in almost this identical language. So, it is clear that in authorizing the governing body of a municipality to set aside as a special fund whatever portion of the income from its utility is necessary to care for the bonds and interest thereon as well as to provide a reasonable reserve therefor, the effect of chapter 11, *supra,* is to

require that this be done from what remains after the expenses of operation and maintenance are taken care of, that is, from the net income, a result that follows from the direction to the governing body that it shall at all times prescribe rates that will make the utility self-liquidating, namely, pay all operating and maintenance costs and, in addition, take care of the bonds and interest thereon as they become due."

The resolution of intention submitting the bonds to the voters did not provide that the gross income from the Civic Recreational Area should be devoted to the payment of the principal and interest of the bonds but merely that these obligations should be "payable solely from revenues pledged to the payment thereof." There would appear, therefore, no reason why the bonds should not be issued and sold under the authority already given by the voters, provided they are issued and sold in accordance with the requirements of section 7, chapter 11, *supra.*

█ Inasmuch, however, as the complaint alleges that the mayor and common council are threatening to pledge the gross income from the activities of the Civic Recreational Area to the payment of the principal and interest of the bonds, leaving the question of upkeep and maintenance to be taken care of by the city from other sources, the allegation must be treated as correct for purposes of the demurrer and, this being true, we cannot do otherwise than hold that the demurrer should have been overruled.

The order dismissing the complaint is, therefore, reversed.

ROSS, J., concurs.

LOCKWOOD, J.—I concur in the result.