[Civil No. 4697. Filed November 13, 1944.]

[153 Pac. (2d) 153.]

ELLIOT LONG, MARTHA PRINA, CLYDE W. IJAMS, Z. C. PRINA, and G. A. DANKWORTH, Appellants, v. TOWN OF THATCHER, a Municipal Corporation, J. H. McRAE, J. NAT HOOPES, J. B. WILLIAMS, J. H. ASAY, W. T. WATSON, F. C. LAYTON, as Mayor, Clerk and Council Members, Respectively and ARIZONA GENERAL UTILITIES, a Corporation, Appellees.

Mr. Guy Anderson, Messrs. Bilby & Shoenhair, and Mr. R. G. Langmade, for Appellants.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, and Mr. J. D. Merrill, for Appellees.

Mr. J. Mercer Johnson, County Attorney of Pima County, as *Amicus Curiae.*

STANFORD, J.—This case comes from Graham County, Arizona, its county seat being Safford. It is a suit brought to enjoin the sale of the property of appellee, Arizona General Utilities Company, a corporation. The sale was about to be made to the Town of Thatcher, a municipal corporation, some three miles west of Safford, when the action was brought by the appellants, all of whom were citizens, taxpayers and property owners of the Town of Safford, incorporated and organized under the general laws of the State of Arizona.

The appellee, Arizona General Utilities Company, owns and operates, under a certificate of convenience and necessity granted by the Arizona Corporation Commission, its business, the principal place of which is at Safford, and in Safford there is located approximately 80% of the physical properties of said company, including the generating units, warehouses, etc. Outside of the corporate limits of the Town of Safford are the transmission and distribution lines run-

ning to Thatcher and other consumers. The Town of Thatcher consumes approximately 20% of the electric energy of the said utility company, and the property of said company within the corporate limits of Thatcher is transmission lines, transformers, meters, etc., consisting, according to the allegations of the complaint, of less than 10% of the physical property of the company.

In August, 1924, the utility company was granted a franchise by the Town of Safford, and under the franchise said company is now occupying and using the streets, avenues and alleys of said town for the operation and maintenance of its electric lines, distribution system, etc. The expiration date of said franchise is August 19, 1949.

The utility company is the only electric utility operating in the Town of Safford, and in that vicinity the only supply of electric energy to the appellants and other residents of the Town of Safford.

The assessed valuation of the holdings and the property of the utility company in the corporate limits of the Town of Safford for the year 1943 was $116,815, making it one of the largest property taxpayers within Safford.

On May 8, 1942, the question of acquiring said utility was submitted to the property taxpayers of the Town of Safford, and on May 3, 1943, the question of issuing revenue bonds for the purchase of same was submitted to the property taxpayers, and in each instance the taxpayers rejected the proposal.

In June, 1943, the Council of the Town of Thatcher adopted a resolution calling for an election for the purpose of submitting to the real property taxpayers of its town the question of whether or not revenue bonds should be issued in the amount of $465,000 to be used for the purpose of purchasing property of the utility company, including that portion of its

property located in the Town of Safford. This election resolution contained a separate section declaring the matter to be an emergency and providing that it should become immediately effective upon its approval. The election was held pursuant to the resolution and the taxpayers of that place voted in favor of the issuance of bonds. The Town of Thatcher immediately entered into an agreement for the purchase of the property of the utility company, and thereupon this action was instituted enjoining the officials of the Town of Thatcher from purchasing said property and enjoining the utility company from the sale of same.

Later the Town of Thatcher adopted a resolution which proposed the fixing and prescribing the rates of electric energy to be sold by it from said utility and the action brought alleges that the Town of Thatcher threatens to impose upon appellants and other consumers of electricity outside of the corporate limits of the Town of Thatcher and within the limits of the town of Safford, rates and charges which are greatly in excess of the rates and charges now in effect and paid by these appellants and other consumers, and it appears that the Town of Thatcher is paying in excess of $50,000 more than the utility is worth.

The purpose of this action was to enjoin the sale of the utility property to the Town of Thatcher and to obtain a declaratory judgment declaring the rights of the parties.

The case was not tried as to the facts, but on motions filed by appellees to dismiss, the trial court, the Honorable C. C. Faires, of the Superior Court of Globe, Arizona, sitting as the judge at Safford, rendered by an opinion "Judgment dismissing amended complaint as to injunctive relief finding that an actual controversy exists between the parties, and deter-

mining such controversy in favor of defendants," from which judgment this appeal is taken.

Appellants claim the following errors were committed by the trial court:

"1. The court erred in granting defendants' motion to dismiss plaintiffs' amended complaint insofar as it prayed for injunctive relief. . . . .

"2. The court erred in rendering judgment purporting to declare the rights of the parties to the action, because no answer was filed, and the cause was not at issue and was never tried.

"3. The court erred in rendering judgment declaring the questions presented by the amended complaint in favor of the defendants and against the plaintiffs for the following reasons:

"(a) The Revenue Bond Act of 1943 (Secs. 16–2601 to 16–2619, Arizona Code Annotated 1939–1943 Supp.) does not authorize and empower the Town of Thatcher to acquire and operate the utility described in the complaint in the Town of Safford;

"(b) The Town of Thatcher has no right, power or authority under the Constitution and laws of Arizona, to acquire or hold the franchise granted by the Town of Safford to the Utility Company; . . .

"(d) The acquisition and operation of the utility property by the Town of Thatcher would deprive the plaintiffs and all others similarly situated as consumers of the electricity supplied by the Utility Company, residing outside the corporate limits of the Town of Thatcher, of their property without due process of law, in violation of Sections 4 and 17, Article II, Constitution of Arizona, and in violation of the Fourteenth Amendment to the Constitution of the United States; . . . "

"4. The court erred by finding, adjudging and delaring in its judgment rendered and entered, 'That the acquisition by the defendant, Town of Thatcher, of the franchises issued by the Town of Safford and now held by the defendant, Arizona General Utilities Company, and the operation of said utility undertaking thereunder in the Town of Safford, will not impair

the obligations of said franchise contract in violation of Section 10, Article I of the Federal Constitution'; because the acquisition of the Utility Company's property in Safford and the transfer to Thatcher of the franchise now held by the Utility Company, and the operation of the utility undertaking thereunder in the Town of Safford, does impair the obligations of the franchise-contract held by the Utility Company, in violation of Section 10, Article I of the Constitution of the United States, as well as Section 25, Article II of the Arizona Constitution.''

Referring to assignment No. 1, it is our holding that all the acts that were attempted are not authorized by the Revenue Bond Act of 1943 as we shall hereafter point out and therefore we are disposing of the assignment by saying that the injunctive relief asked for was proper. That part of Sec. 26–104, Arizona Code Annotated 1939, relative to injunctions complained about by the appellant is ''An injunction can not be granted . . . to prevent the execution of a public statute, by officers of the law, for the public benefit; . . . ''

Appellants claim by their assignment No. 2 that the trial court erred in giving its judgment on the petition for declaratory judgment prayed for in the complaint because no answer was filed and no evidence taken at the trial. Sec. 27–705, Arizona Code Annotated 1939, in relation to determining issues of fact in declaratory judgments, reads as follows:

''An issue of fact arising in an action hereunder may be tried and determined as issues of fact are tried and determined in other civil actions. . . . ''

The complaint asked for declaratory judgment, and we cannot see where the trial court had jurisdiction to render such a judgment until the cause was at issue and tried or the facts established.

The other assignments we will dispose of together.

 The action brought seeks to enjoin the governing bodies of Thatcher from proceeding to acquire from the Arizona General Utilities Company its franchise to operate its electric light and power plant in the town of Safford, proposing itself to acquire such franchise by issuing its bonds as provided in sections 16–2603 and 16–2604, 1943 Sup. to Arizona Code Annotated 1939.

The statute the Town of Thatcher is proceeding under was passed in March, 1943, and is supplemental to Sections 16–602, 16–603, 16–604 and 16–605, Arizona Code Annotated 1939. Section 16–602 supplements section 5, article 13 of the state Constitution by providing that a municipality may engage in any business or enterprise that a person, firm or corporation may engage in by virtue of a franchise from the municipality, and for that purpose may issue and sell its interest-bearing bonds, and fix rates to be charged for services to the public.

Section 16–603 provides that the authority of the municipal corporation to construct or acquire a plant or property of a public utility must be given by the majority vote of the qualified electors or taxpayers of the municipal corporation.

Section 16–604 authorizes a municipality to purchase the franchise and the property or plant at a fair valuation to be determined as therein stated.

We now quote sections 16–2603 and 16–2604, 1943 Sup. to Arizona Code Annotated 1939, verbatim for the reason that it is by virtue of these sections that the Town of Thatcher proposes to buy and operate the utility now furnishing the town of Safford electric light and power:

"16–2603. *Powers of municipalities.*—In addition to any powers it may now have a municipality shall have power: 1. subject to the requirements and restrictions of Sections 16–604 and 16–605, Arizona

Code of 1939 (sections 3 and 4, chapter 77, Session Laws of 1933, regular session), within or without its corporate limits, to construct, improve, reconstruct, extend, operate, maintain, and acquire, by gift, purchase, or the exercise of the right of eminent domain, any utility undertaking or part thereof, and acquire in like manner land, rights in land, or water rights in connection therewith; 2. to issue its bonds to finance the cost thereof, and, 3. to pledge to the punctual payment of the bonds and interest thereon an amount of the revenue of the utility undertaking, including improvements or extensions thereafter constructed or acquired, sufficient to pay the bonds and interest as the same shall become due, and to create and maintain reasonable reserves therefor. The amount pledged may consist of all or any part of such revenue. The governing body of the municipality, in determining the cost of the utility undertaking for which bonds are to be issued, may include all costs and estimated costs of the issuance of the bonds, all engineering, inspection, fiscal, and legal expenses allowed by law, and interest which it is estimated will accrue on money borrowed or which will be borrowed during the construction period and for six (6) months thereafter."

"16–2604. *Vote on bond issues.*—Questions of bond issues under this act shall be submitted to the real property taxpayers who are in all other respects qualified electors of the municipality. No bonds shall be issued without the assent of a majority of such qualified electors voting at an election held for that purpose, as provided in this act."

Before the passage of the bond act of March, 1943, a municipality wishing to operate a public utility furnishing its people with light and power or water could do so by acquiring the utility already performing that function by paying a fair valuation for the plant, to be ascertained in condemnation proceedings. Sections 16–603 and 16–604, *supra.* In other words, the owner of the utility was to be compensated for

his property before it was taken. His property could not be taken and operated and paid for out of the revenue collected therefrom. The purchaser was required to pay for the property before operating it or claiming it as his own.

The rule was changed or attempted to be changed by the bond act of 1943. The Town of Thatcher has accepted the offer under that act, and, by a vote of the taxpayers and qualified electors thereof, has obtained permission and authority to issue its bonds for the cost of the "utility undertaking" (including improvements or extensions thereafter constructed or acquired), supplying it and Safford with power, and thereby acquire title to such utility, not only that part located within the limits of Thatcher but also the portion located within the limits of Safford. These bonds, under the law, are not issued as the obligation of Thatcher but they and the interest thereon, it is provided, shall be paid out of the revenue collected from the users and patrons of the light and power plants wherever located. By this operation that portion of the light and power plant located in and supplying the residents of Safford is taken from Safford and given to Thatcher without any compensation whatever. Something like 80% of the income from the power plant is paid by the patrons of the Safford plant for which it gives service but obtain no interest in the property of the plant, the title thereto being lodged in Thatcher.

This is a kind of action the law cannot and does not approve or tolerate. It is taking the property of the Safford plant without compensation first being made, which violates section 17, of article 2, of the state Constitution. It takes away from Safford the right to control its streets and to issue a franchise to a power plant to furnish light and power to its

citizens, and gives it over to a neighboring municipality.

The case of *Crandall* v. *Town of Safford,* 47 Ariz. 402, 56 Pac. (2d) 660, 663, is relied on by the appellees herein, together with other cases, and they set forth that this court has upheld the acquisition and operation of the Town of Safford of a utility serving both Thatcher and Safford, and state that the only difference is that the Crandall case referred to the acquisition of water by Safford wherein it supplied Thatcher, while this is a case of electric power where Thatcher is to serve Safford. From that case we quote the following:

" . . . Since there is no question of the municipality's right to operate outside its corporate limits, it is not important where those it serves beyond its border reside, whether within or without some other municipal corporation. If the operating municipality is able to obtain acceptable terms from one it desires to serve from its surplus or excess water supply, we know of nothing that would stand in the way of its doing so, any more than would be true in the case of a private corporation that might wish to operate its water system outside the limits of the municipality granting its franchise. . . . "

It can easily be seen that the facts set forth in the Crandall case are not applicable here. With all that we have heard about the Crandall case there has not been presented to us the fact that the Town of Safford has ever consented to the Town of Thatcher coming into its limits.

Such proceedings as these are controlled entirely by that part of our Code mentioned, and we quote these lines from Sec. 16–2618, Act of 1943, "In so far as the provisions of this act are inconsistent with any other provision of law, the provisions of this act shall be controlling."

Sec. 16–2603, *supra,* under the heading of "Powers of municipalities," says, "within or without its corporate limits, to construct, improve, reconstruct, extend, operate, maintain, and acquire." This section which we say is controlling as to the rights and powers of the municipality of the Town of Thatcher does not by the words "within or without" give it the power to invade the corporate limits of another municipality, but limits its operations to its own territory and territory not within the limits of another incorporated town already furnishing light and power to its inhabitants.

A very important matter to be considered in this case is that the Town of Safford under our law when accepting its electric power from another municipality would be entitled to only the surplus should there be a deficiency in power for any reason. In that respect we quote the following from the case of *City of Phoenix* v. *Kasun,* 54 Ariz. 470, 97 Pac. (2d) 210, 212:

"We have previously laid down certain rules governing municipal corporations operating public utilities, both within and without their corporate limits. They may be stated as follows: (a) a municipal corporation has a right to furnish water through its municipal water plant to consumers without, as well as within, its corporate limits; (b) while furnishing water in this manner the state corporation commission has no jurisdiction to regulate its actions towards consumers, whether inside or outside of such limits; (c) the legislature is the only body which has the right to regulate the rates charged by a municipal corporation operating a public utility, and it has plenary power in that respect except as limited by the Constitution; (d) a municipality may not compel consumers outside of its corporate limits to purchase water from it, nor can it be compelled to furnish such water to non-residents; (e) a municipality can only dispose of its surplus water outside of its corporate

limits subject to the prior right of its inhabitants in case of shortage. . . . ''

By the amended complaint we find the allegation that the appellee, Arizona General Utilities Company, is the second largest property taxpayer paying taxes to the Town of Safford, and for the year 1943 the assessed valuation of their holdings and property in Safford was $116,815. Under decisions of this court there would be no taxes that the Town of Safford could collect when another municipality takes over the franchise and sells its electric power to Safford. The said amended complaint also alleges that the appellants are the owners of real and personal property located within the Town of Safford. It stands to reason that their property would be more heavily taxed in event the appellee should prevail and the Town of Safford would lose one of its main sources of income.

That, together with the fact that the bonded indebtedness to pay for the utility is to be paid under our law by and through the rates charged for electric power, means that the burden must fall heavily on the citizens of the Town of Safford.

The appellees herein in submitting their brief have cited eleven full pages of cases including constitutional provisions, text books and notes, but we feel that this is a matter governed by our statute heretofore existing and supplemented in 1943 and the constitutional provision heretofore cited, and accordingly we are required to adhere to our own law as we see it and as above expressed. The appellees have stated that ''The legal questions involved were answered satisfactorily in this court in the case of *Crandall* v. *Safford,* 47 Ariz. 402, 56 Pac. (2d) 660. The correctness and the decision in that case has never been questioned,'' but we have just expressed

67

our views on the applicability of the Crandall case to the case at bar.

The judgment is reversed and the cause is remanded with directions to the trial court to enter judgment for plaintiffs enjoining defendants from proceeding further with the purchase and sale of the utility involved.

McALISTER, C. J., and ROSS, J., concur.