**TOWN OF SOUTH TUCSON v. TUCSON GAS, ELECTRIC LIGHT & POWER CO.**

No. 10921.

Circuit Court of Appeals, Ninth Circuit.

June 12, 1945.

Harry O. Juliani, of Phoenix, Ariz., and Stover & Martin, of Tucson, Ariz., for appellant.

Darnell & Robertson, George R. Darnell, and Lawrence V. Robertson, all of Tucson, Ariz., for appellee.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a final judgment of dismissal by appellant, an Arizona municipal corporation, located within Pima County, Arizona, hereinafter called the Town, seeking the exercise of the court's jurisdiction to condemn all of the properties of the appellee, a corporation of the State of Colorado, hereinafter called the Power Company.

The Town filed its complaint in the Superior Court of the State of Arizona, in and for the County of Pima. On the motion of the Power Company the case was removed to the United States District Court for the District of Arizona on the ground of diversity of citizenship. The case on the merits is concerned solely with the law of Arizona.

Appellant assigns several grounds of error in the judgment of the district court. That court filed no opinion. It is contended that the Power Company is urging here certain matters not presented in the court below and hence not within our cognizance. In this the appellant is in

error, since we are required to seek the support of the judgment appealed from upon any ground disclosed in the record. Le Tulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355, and cases cited. Underlying all the contentions is the question of the court's jurisdiction to proceed to condemn appellee's properties as disclosed in the complaint seeking its exercise. This, if it were not urged in the Power Company's brief, this court would be required to consider sua sponte.

■ In Arizona the performance by the party seeking condemnation of the statutory conditions precedent to exercising the power to condemn is held to be essential to the court's jurisdiction to proceed with the litigation. In that state the question may be determined in a collateral attack upon the condemnation suit by the property owner, in a suit in the Arizona supreme court for a writ of prohibition addressed to the trial court in which the condemnation is sought, to prevent that court "from proceeding."

In Re Forsstrom, 44 Ariz. 472, 497, 38 P.2d 878, 888, such a writ was sought in the supreme court on the ground, inter alia, that the pleadings in the trial court showed that a resolution of the condemning body, the City Council, had not declared the necessity of the taking for a public use, claimed to be required by the statute.

The Arizona supreme court considered the resolution and other action of the City Council required by the statute to determine whether its action brought it "within the powers" of condemnation conferred upon the city. The supreme court held inter alia, that "since the *ordinance* providing for the condemnation * * * appears to be constitutional, and *within the powers* of the city of Tucson * * * the superior court has the jurisdiction to proceed with the said suit * * * under the provisions of chapter 23 [of the Revised Code

of Arizona of 1928]."[1] (Emphasis supplied.)

■ The party against whom the court must exercise its jurisdiction to condemn also may raise that jurisdictional question in the state court by demurrer; in the federal district court by the equivalent motion to dismiss. County of Apache v. Udall, 38 Ariz. 488. In the event the demurrer be overruled by the Arizona superior court, the property owner need not wait until the final decision in the case but at once may seek certiorari in the Arizona supreme court. Bugbee v. Superior Court, 34 Ariz. 38, 267 P. 420.

To invoke the jurisdiction of the superior court, the statutory requirements of the Municipal Revenue Bond Act of 1943, with which the complaint must allege compliance, are

"16-2603. Powers of municipalities.— In addition to any powers it may now have a municipality shall have power: * * * [to] acquire, by * * * the exercise of the right of eminent domain, *any utility undertaking or part thereof,* and acquire in like manner land, rights in land, or water rights in connection therewith; 2. to issue its bonds to finance the cost thereof. * * *"

"16-2604. Vote on bond issues.—Questions of bond issues under this act shall be submitted to the real property taxpayers who are in all other respects qualified electors of the municipality. No bonds shall be issued without the assent of a majority of such qualified electors voting at. an election held for that purpose, as provided in this act. * * *"

"16-2605. Election resolution.—(a) The governing body shall adopt an election resolution calling an election upon the question of the issuance of bonds. Such resolution shall state in substance: 1. the maximum amount of bonds to be issued; 2.

---

[1] Failure to allege compliance with such conditions precedent is regarded as necessary to the jurisdiction to proceed to condemn by other courts of the United States, Oregon, Indiana, Ohio, and other states. Old Dominion Land Co. v. United States, 269 U.S. 55, 66, 67, 46 S.Ct. 39, 70 L.Ed. 162; Kerns v. Union County, 123 Or. 103, 107, 261 P. 76; Southern Indiana Gas Co. v. Booneville, 215 Ind. 552, 20 N.E.2d 648, 650; Cleveland, C., C. & St. L. Ry. Co. v. Ohio Postal Cable Co., 68 Ohio St. 306, 67 N.E. 890, 892, 62 L.R.A. 941; City of Kirksville v. Hines, 285 Mo. 233, 225 S. W. 950, 952; State ex rel. McLeod v. District Court, 67 Mont. 164, 167, 215 P. 240; Great Northern Ry. v. Superior Court, 126 Cal.App. 575, 583, 14 P.2d 899; but cf. contra, La Mesa, Lemon Grove & Spring Valley Irr. Dist. v. Superior Court, 73 Cal.App. 90, 238 P. 117, and Felton Water Co. v. Superior Court, 82 Cal.App. 382, 388, 256 P. 255.

849

the *purpose* for which the bonds are to be issued  *  *  *." (Emphasis supplied.)

■ This court takes judicial notice of the outstanding importance of the election to determine whether a municipality shall engage in such quasi public functions as the service to its community of electrical power and light, gas or electricity. For a successful administration, behind the bare bones of the statute there must prevail a real and continuing interest of the members of the community to be served—an interest first created by publication of the resolutions proposing to the electorate the acquisition of the properties sought to be condemned, with their adequate description.

Here the statute permitted the acquisition either (1) of all of the utility's properties to be condemned or (2) a part of them, or (3) as corollary to the latter, all of the utility's properties except such as by law could not be acquired. What the provisions of the resolution adopted by the Common Council of the Town proposed to acquire is described in the complaint as "all of the electric and gas properties, plants and systems, together with all appurtenances and incorporeal hereditaments of the defendant, the Tucson Gas Electric Light and Power Company," situated in the Town, the adjoining City of Tucson, the surrounding territory of the County of Pima and the extensions of the distributing system in the counties of Pinal, Santa Cruz, and Cochise, adjoining the County of Pima.

It is clear from the allegations of the complaint that what the electorate of the Town was asked to vote their bonds to secure was the unit of the entire system as a whole and not a mere disjointed part or parts of the system. The properties sought to be condemned are particularly described by metes and bounds and other descriptive material. The description is divided into eight parts in the complaint, requiring fourteen pages of printed matter detailing, describing and locating the power houses, gas plants, gas holders, substations, transmission lines and all the engines, boilers, dynamos, etc., and other appliances, gas or mechanical, owned by the Power Company.

Although the Arizona supreme court had not then decided the question, its subsequent decision holds it was then the law of Arizona that that portion of the Power Company's utility gas and electric plant and equipment and distribution system situated in the City of Tucson could not be acquired by the Town. Long, et al., v. Town of Thatcher, 61 Ariz. ——, 153 P.2d 153. This constituted the major portion of the properties sought to be condemned by the Town.

It was conceded at the argument that there was no completed connection between the portion of the Power Company's holdings in the Town and the remnant of the system in the county outside the City of Tucson. Undoubtedly the voters for the acquisition of "all" the properties of the Power Company were under the impression that all were to be acquired, for that is what the resolution stated. To have acquired such a disjointed remnant of the existing unit of the Power Company, the resolution of the Town Council should have read "for the purpose of acquiring that part of the whole system which can be legally condemned." Or the resolution should have provided for the taking of a part of the system with a description of the part to be taken.

■ We are of the opinion that the allegations of the Town's complaint show that it has not complied with the requirements of the statute with regard to the resolution describing the properties sought to be condemned and thereafter paid for by the bonds, and that under the cases above cited the defect goes to the essence of the municipal ownership legislation.

We therefore hold that because of such absence of jurisdiction to condemn the properties of the Power Company, the district court was entitled to dismiss the complaint and that its judgment of dismissal must be

Affirmed.