## CITY OF TUCSON v. THE TUCSON GAS, ELECTRIC LIGHT & POWER CO.

### No. 11005.

Circuit Court of Appeals, Ninth Circuit.

Dec. 26, 1945.

---

[12] 55 C.J., Sales, §§ 43–53, pp. 78–88; 46 Am.Jur., Sales, §§ 45–47, pp. 234–238.

Thos J. Elliott, of Tucson, Ariz., for appellant.

Darnell & Robertson, George R. Darnell, and Lawrence V. Robertson, all of Tucson, Ariz., for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, hereinafter called City, appeals from a judgment dismissing a complaint in a condemnation proceeding in which it seeks a judgment of valuation of all the electric and gas plants and system of the appellee, hereinafter called Company, for purposes of procuring a final order of condemnation vesting title of the property in the City after revenue bonds for their acquisition have been issued and disposed of and the amount awarded is paid. Arizona Constitution, Art. 2, Sec. 17, Revised Stats.1928, §§ 1346, 1347, Arizona Code Annotated, 1939, §§ 27-918, 27-919.

Though the judgment assessing the value of the properties to be acquired is called a final judgment, condemnation—that is the vesting of title—is not made until the assessed amount is paid. Failure to pay the amount within the statutory time requires that the interlocutory order for condemnation be set aside and the entire proceedings annulled with a right of execution in the defendant. Id. § 27-918. For properties to be paid for by revenue bonds, the time after the judgment fixing the price within which the payment is to be made is eighteen months. Arizona Laws 1933, ch. 77, § 3, p. 313.

The District Court, as also in the case of Town of South Tucson v. Tucson Gas, Electric & Pow. Co., 9 Cir., 149 F.2d 847, failed to give us the benefit of its views of the law of the State of Arizona in which it sits. We expect such assistance, at least, in cases of such importance as these of first instance under Arizona's recent revenue Bond legislation of 1943. Nor was the City complied with our rule 20(f) requiring that its briefs print "so much [of the statutes cited] as may be deemed necessary to the decision of the case."

■ One of the contentions urged by the Company to support the decision is the absence of an allegation that the taxpaying voters of the City had voted for the bond issue. Section 16-2604, Arizona Code Ann., 1939, provides

"Sec. 16-2604. Vote on bond issues.— Questions of bond issues under this act shall be submitted to the real property taxpayers who are in all other respects qualified electors of the municipality. No bonds shall be issued without the assent of a majority of such qualified electors voting at an election held for that purpose, as provided in this act. (Laws 1943, ch. 31, § 4, p. 72)"

The significant portion of the section is that the election is to come before the *issuance* of the bonds.[1] It does not pro-

---

[1] Sec. 16-2604 enacted in 1943, which expressly supersedes § 16-603, Laws of 1933, ch. 77, § 2, p. 313, is significantly different in its provisions.

"§ 16-603. Authorization at election.— Before any construction, purchase, acquisition or lease, by any municipal corporation, as authorized in section 1 (§ 16-602), of any plant or property, or any portion thereof, devoted to the busi-ness of or services rendered by a public utility, shall be undertaken, such construction, purchase, acquisition or lease must be authorized by the affirmative vote of a majority of the qualified electors, who are taxpayers, of such municipal corporation voting at a general or special municipal election duly called and held for the purpose of voting upon such question."

vide that it shall precede the filing of the complaint for condemnation. It is obviously advantageous that the voters first should have fixed the valuation by the court instead of a preliminary estimate by the City Council. If the amount fixed by the Council and voted for by the electorate is less than that later fixed by the court, the whole court proceeding is wasted effort. The voters well may vote for a larger amount if they realize it is determined by court process. In any event, the voters better will be advised after such a judicial determination. We hold that the voters' consent may be given at an election after the court has assessed the amount to be paid for the property sought to be condemned.

█ The Company contends that the suit, brought in the County of Pima, has jurisdiction only over the portions of the utility undertaking in that county, citing § 27-909 (Arizona Code Ann.1939) providing,

"§ 27-909. *Action for condemnation—Immediate possession—Money deposit.—* All proceedings for condemnation must be brought in the superior court of the county in which the property is situated, *in the same manner as other civil actions.* * * *" (Emphasis supplied.)

From this the argument is that the electric system also extending over Pinal, Santa Cruz and Cochise counties cannot be divided by the court for assessing damages. Hence it is argued there never can be a just assessment of damages in a condemnation of a utility extending over more than one county, since any such attempt would violate the Arizona constitutional provision of Sec. 17, Art. 2, providing for just compensation in such proceedings. We do not agree, even assuming that the suits must be brought in several counties. The apportionment of damages of the properties in the several counties may be difficult, but such difficulty often attends the assessment of damages.

However, we are of the opinion that under the Arizona statutes the state superior court may have jurisdiction of the condemnation of the entire property if a part of the property of the utility undertaking is situated in that county. The phrase of § 27-909, supra, "in the same manner as other civil actions" refers to the venue provision for other civil actions. Arizona Code, Annotated, 1939, § 21-101

(12) provides as to the venue for real property actions. "12. Action for the recovery of real property, for damages thereto, for rents, profits, use and occupation thereof, for partition thereof, to quiet title thereto, to remove a cloud or incumbrance on the title thereto, to foreclose mortgages and other liens thereon, to prevent or stay waste or injuries thereto, *and all other actions concerning real property,* shall be brought in the county in which the real property or a part thereof is situated." (Emphasis supplied.)

As to personal property, Section 21-101 (11) recognizes the presumption that personal property is where the owner is. It reads "11. Actions for the recovery of personal property may be brought in the county in which the property may be or in which the defendant or any of several defendants may be found."

█ These actions concern venue and not jurisdiction to hear and determine litigation concerning such property, which remains in the court of filing unless there be affidavits filed before the time to answer. § 21-102. Only upon a showing of lack of venue is the case transferred to another county. The extraordinary difficulties in segregation of such properties for valuation, stressed by the Company, accentuates the conclusion that the Arizona Legislature conceived § 27-909 as such a venue provision.

█ The City points out that if it had brought its suit in the United States District Court for Arizona that court would have jurisdiction to determine as a unit the value of the properties in the four counties. Having been brought into that court by the Company under the diversity of citizenship statute, 28 U.S.C. 41 (1), 28 U.S.C.A. § 41(1), providing that the "controversy" between the parties shall be adjudicated there, the City argues that the controversy between the parties as to the condemnation of the entire plant necessarily is before that court. Since the objection of the Company is one based on venue and not jurisdiction and the case cannot be transferred to an Arizona county court, we agree with the City's contention that if the District Court otherwise has jurisdiction to condemn property outside the City's boundaries that court has it to condemn the entire property.

█ The Company contends that the provisions of the Arizona law of 1901, now

in Arizona Code Annotated 1939, § 27-916, fixing the time of determination of damages as at the service of summons and allowing no interest and nothing for improvements between that date and the final order of condemnation, violate Section 17, Art. 2 of the Arizona Constitution, providing for just compensation in condemnation proceedings. It contends that during the period of litigation the public utility possibly may be required by the Arizona Corporation Commission to make capital investments for extended power and light service to new customers in the litigating period between the filing of the complaint and the payment within the eighteen months after the judgment for condemnation and also that it is entitled to interest in that period.

Were such a contention to prevail it would frustrate entirely Arizona's legislation for the acquisition by municipalities of the corporate utilities. We do not agree. The public utility corporation, with its peculiar privileges under the Arizona laws, must take the unfavorable with the favorable when it seeks to act under such laws. Such a construction gives effect to the legislation for the municipal acquisition of public utilities instead of nullifying it. Whether a public utility may refuse to comply with the orders of the Corporation Commission for permanent improvements during the litigation, on the ground that they may be taken without compensation, is a question we are not required to decide.

■ The Company contends that where the property sought to be condemned consists of portions of the plant outside a city seeking condemnation and serves the public there, the plant as a whole cannot be acquired by the city. It relies upon the general provision of § 27-907, Arizona Code Annotated, 1939, requiring for the condemnation of a public utility that the city's "public use to which it is to be applied is a more necessary public use" and the holding of the Arizona supreme court that in serving the customers outside the municipal boundaries it is not a public utility but is no more than a private supplier.[2] It argues that, since the City would supply less persons who can command its use under the public utility laws of the state, the proposed condemnation violates § 27-907. Again, this is a contention which would frustrate all the legislation for acquisition by a municipality of a utility undertaking in part outside its boundaries.

We do not agree. The specific provision of Section 16-2603 of the later 1943 revenue bond act is that the city may acquire "any utility undertaking or part thereof" "within or without its corporate limits" controls general section 27-907. We must give effect to the words "within or without its corporate limits." The Legislature could not have considered a greater number of consumers are required to make a municipal operation a "more necessary" operation. If the contrary were true, no municipality could condemn the properties of a utility entirely within its area.

If the 1943 act must be regarded as a mere extension of the prior condemnation legislation, it is our view that the Legislature must have considered that appellee's whole utility is put to a higher use when operated by a municipality, though as to some part of it customers outside the city limits are no longer under the public service laws formerly controlling their service.

■ The Company claims we must take judicial notice that a part of the utility undertaking sought to be acquired is located in the Town of South Tucson. It claims as controlling here the decision of Long v. Town of Thatcher, Ariz., 153 P. 2d 153, in which the Arizona Supreme Court held that the Town of Thatcher could not acquire the properties of a public utility company located in the Town of Safford, which latter town had granted a franchise to the company and which had not consented to the Town of Thatcher's acquisition of the franchise or the utility properties located in Safford. The case does not purport to overrule the holding in Crandall v. Town of Safford, 47 Ariz. 402, 56 P.2d 660, that there may be such an acquisition of the properties in a consenting town which has not granted a franchise to the company.

The Town of Thatcher case may or may not ultimately control the decision of this case, but the pertinent facts do not appear in the complaint in the instant case. We cannot take judicial notice of the allegations in the complaint in the case of Town of South Tucson v. Tucson Gas, etc. Co., supra, decided by us on June 12, 1945, since

---

[2] City of Phœnix v. Kasun, 54 Ariz. 470, 97 P.2d 210, 127 A.L.R. 84.

in that case the City of Tucson was not a party. The descriptions in the instant complaint do not name South Tucson as the location of any of the property, much less that the Company operates there under that town's franchise, or that that town has not consented to the City's acquisition of the Company's properties and its franchise to operate there, if there be one.

Obviously such a defense will be raised by answer below. If the City be seeking to condemn the portion of the Company's plant in South Tucson and is convinced that it should not attempt to do so,[3] the question of its power may not survive for our consideration. If it survive, we will have the expressed views of the Arizona district court. Cf. United States v. Ballard, 322 U.S. 78, 88, 64 S.Ct. 882, 88 L.Ed. 1148.

The judgment is reversed and the case remanded for further proceedings.

---

[3] Cf. Remington's Revised Statutes of Washington, § 9209—3, Laws 1933, p. 283, § 3.